COZEN O'CONNOR  
*Attorneys for 163 East 69 Realty, LLC*  
Frederick E. Schmidt, Jr.  
277 Park Avenue  
New York, NY  10172  
(212) 883-4900  
(646) 588-1552  
eschmidt@cozen.com

Hearing Date: April 20, 2016 at 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CONGREGATION ACHPRETVIA TAL CHAIM SHARHAYU SHOR, INC.,<br><br>　　　　　　　　Debtor. | Chapter 11<br><br>Case No.: 16-10092 (MEW) |
| 163 EAST 69 REALTY, LLC<br><br>　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>CONGREGATION ACHPRETVIA TAL CHAIM SHARHAYU SHOR, INC., A New York Religious Corporation,<br><br>　　　　　　　　Defendant. | Supreme Court Index No. 161573/2015<br><br>Dist. Court Case No. 1:16-cv-01666- VM<br><br>Adv. Proc. No. 16-01047 (MEW) |
| CONGREGATION ACHPRETVIA TAL CHAIM SHAR HAYUSHOR, INC., a New York Religious Corporation<br><br>　　　　　　　　Third Party Plaintiff,<br><br>　　-against-<br><br>ALVIN H. GLICK, as a Director of Congregation Achpretvia Tal Chaim Shar Hayushor, Inc.; ALVIN H. GLICK, as Officer of MAUTNER-GLICK CORP., a New York Business Corporation; CLAUDE CASTRO, ESQ., Individually; CLAUDE CASTRO & ASSOCIATES PLLC, a New York Professional Service Limited Liability Company and HENRY KOHN, ESQ.,<br><br>　　　　　　　　Third Party Defendants. | |

**163 EAST 69 REALTY, LLC'S REPLY IN FURTHER
SUPPORT OF MOTION TO DISMISS CHAPTER 11 CASE OR,
IN THE ALTERNATIVE, TO ABSTAIN FROM HEARING
ACTION REMOVED FROM STATE COURT AND TO
<u>REMAND THAT ACTION BACK TO STATE COURT</u>**

163 East 69 Realty, LLC (the "**Purchaser**"), by its attorneys, Cozen O'Connor, in further support of its motion [ECF # 21] (the "**Motion**")[1] seeking an order dismissing the above-captioned chapter 11 case, or in the alternative, abstaining from hearing and remanding the State Court Action back to State Court, and in reply to the Debtor's response to the Motion [ECF # 37] (the "**Response**"), respectfully represents as follows:

1. For the reasons set forth below, and for all of the reasons set forth in the Motion,[2] the Debtor's chapter 11 case should be dismissed or, in the alternative, the Court should abstain from hearing the State Court Action and should remand that action back to State Court.

**<u>The Debtor's Asserted Purpose for Filing Its Bankruptcy Petition is Not Credible</u>**

2. In its Response, the Debtor seeks to save its chapter 11 case from dismissal by arguing that its bankruptcy petition was filed in good faith and for a proper purpose. Although the Response is voluminous, the essence of the Debtor's arguments regarding a legitimate bankruptcy purpose is as follows: (i) the Debtor was under financial pressure because it could not afford an attorney to represent it in the State Court Action; and (ii) the only way it could obtain funds to defend itself in that lawsuit was to borrow money from Fairway, which conditioned the loan on

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[2] The Purchaser, in the interest of brevity and conservation of judicial resources, does not repeat at length herein all of the arguments set forth in the Motion, but continues to rely on such arguments, and the authorities on which they are based.

2

the Debtor's filing of a chapter 11 petition. That is the sum and substance of the Debtor's argument that it filed in good faith. When examined, those arguments break down and fall apart.

3. The Debtor's assertion that it was under financial pressure because it could not afford an attorney to defend it in the State Court Action simply does not hold water. When the State Court docket is examined, it is quickly revealed that shortly after the State Court Action was commenced, the firm of Goldstein Hall PLLC ("**GH**"), filed a notice of appearance on behalf of the Debtor. A copy of that notice of appearance is annexed hereto as **Exhibit "A"**. GH is the same law firm that was retained by the Debtor as special litigation counsel by order of this Court entered on March 4, 2016 [ECF # 19].

4. Presumably, before agreeing to represent the Debtor in the litigation, GH would have become aware of and familiar with the facts that: (1) the Debtor was not operating; (2) the Debtor had no funds or other liquid assets to pay either a retainer or GH's fees going forward; and (3) the only thing of legitimate value owned by the Debtor which could be used as a source of funds to pay GH's fees was the Property, which was itself the subject of the litigation.[3]

5. Undaunted by the Debtor's financial condition, GH nevertheless agreed to represent the Debtor and filed its notice of appearance on November 23, 2015. On or about December 7, 2015, GH filed a verified answer on behalf of the Debtor. Shortly thereafter, on or about December 28, 2015, GH filed a verified amended answer with counterclaims as well as a third party complaint on behalf of the Debtor, thus increasing the costs of the litigation. Importantly, GH never filed any motion seeking to withdraw as counsel due to the Debtor's inability to pay its fees or for any other reason. Indeed, all indications were that GH had zealously

---

[3] Although not relevant to a determination of the Motion, the Purchaser vigorously disputes the Debtor's allegations that the $9.75 million purchase price under the Contract below market back in 2014, when the Contract was entered into.

3

represented the interests of the Debtor, as indicated by all of the aforementioned pleadings and the extensive opposition to the OSC that GH prepared and filed on January 8, 2016. A copy of GH's opposition papers is annexed hereto as **Exhibit "B"**.

6.  In sum, the Debtor's assertion that it was compelled to file a bankruptcy petition because it could not afford to defend itself in the State Court Action is completely undermined by the following indisputable facts: (1) the Debtor was indeed represented by counsel in the specific performance litigation; (2) the Debtor's counsel undertook to effectively represent it; (3) the Debtor's counsel filed numerous pleadings, including two answers, a third-party complaint, and extensive opposition to the OSC (which opposition was filed just one week prior to the Debtor's filing of the Debtor's bankruptcy petition); and (4) the Debtor's counsel never sought to withdraw as counsel for any reason whatsoever. In light of those indisputable facts, the Debtor's allegation that it was unable to defend itself in the State Court Action rings hollow.

7.  The Debtor's argument that Fairway forced it into filing a bankruptcy as a condition to making a loan fares no better under examination. First, the only evidence of this purported chapter 11 condition to the loan is the after-the-fact affidavit of Mr. Teichman, submitted by the Debtor in opposition to the Motion. Conspicuously absent from the Debtor's Response, is a copy of any contemporaneous loan documentation which contains the asserted bankruptcy filing condition.[4]

8.  Further, Mr. Teichman and the Debtor now argue that the bankruptcy-filing condition to the loan was necessary in order to avoid years in state court litigation during which the Debtor would be unable to sell the Property to any third party. As set forth below, however,

---

[4] The Purchaser has not been made privy to any loan documentation.

4

the Debtor's bankruptcy filing actually impeded the quick resolution of the dispute regarding disposition of the Property.

9. On December 24, 2015, the State Court entered the TRO which enjoined the Debtor from taking any act to sell the Property to any third party. As the Debtor now points out, the TRO was set to expire at the hearing on the OSC, which was scheduled for January 19, 2016. Had the Debtor not filed its bankruptcy petition on January 15, 2016, and had it instead allowed the January 19th hearing to proceed as scheduled, the dispute over the Property would very likely have been resolved one way or the other.[5] If the Purchaser prevailed, the Debtor would have been directed to submit an application with the NYAG seeking approval of the sale of the Property to the Purchaser. If, on the other hand, the Debtor prevailed, the TRO would have dissolved, no preliminary injunction would have been entered in its place, and all legal impediments to the Debtor's sale of the Property to a third party would have been removed. The Debtor, by filing its bankruptcy petition, ensured that the hearing on the OSC could not go forward as scheduled, thereby delaying any ruling on a disposition of the Property. Thus, the actual consequences of the Debtor's bankruptcy filing undercut its argument now that a bankruptcy filing was necessary in order to avoid lengthy litigation in State Court.

**The Relief Sought in the Motion is Not Premature**

10. The Debtor claims that the entire State Court Action must be fully litigated in order to determine whether the Purchaser is a party-in-interest before the Motion can be decided. However, the Purchaser clearly has an interest (albeit disputed) in the Property and is a counterparty to a contract with the Debtor. Clearly, therefore, the Purchaser has an interest in this

---

[5] This discussion also demonstrates why, in the context of mandatory abstention, the Debtor has failed to meet its burden to demonstrate that the State Court Action could not be timely adjudicated in State Court.

chapter 11 case and has standing to seek the relief set forth in the Motion. The Purchaser is not aware of any authority to the contrary, nor has the Debtor cited to any.

### The Debtor's Filing of a Sale Motion Further Manifests its Bad Faith

11. In the weeks since the filing of the Motion, the Debtor has filed various motions in this Court which underscore the need for dismissal of this case or, in the alternative, remand of the State Court Action back to State Court. First, the Debtor filed a motion seeking approval of bidding procedures and the sale of the Property. Confirming the Purchaser's suspicions, the Debtor's proposed stalking horse purchaser is none other than Fairway. Not only does the Fairway bid contradict Mr. Friedlander's testimony at the 341 meeting of creditors that Fairway was not a prospective buyer, but it also supports the notion that this bankruptcy case was filed, and continues to be run, not for the benefit of creditors (all of whom would be paid in full under any scenario), but for the benefit of Fairway and the Insiders.

### The Debtor's Filing of a Motion to Amend its Answer and Third Party Complaint Further Supports Abstention and Remand

12. In addition to the foregoing, the Debtor's recent motion seeking authority to amend its answer and third party complaint to assert defenses under section 715 of the New York Not-For Profit Corporation Law ("**NPCL**"), bolsters the Purchaser's arguments that this Court should abstain from hearing the State Court Action and remand that action back to State Court. As argued in the Motion, the State Court Action involves issues of real property law and specific performance under New York State law. By seeking to amend its answer and third party complaint to include defenses under the NCPL, the Debtor not only increases the complexity of the dispute, but it also compounds the state law issues to be decided. Thus, the Purchaser's arguments concerning

6

mandatory abstention, permissive abstention, and equitable remand are all enhanced by the Debtor's motion seeking to amend the answer and third party complaint.

### **The Debtor Has Not Met Its Burden to Demonstrate that the State Court Action Cannot be Timely Adjudicated in State Court**

13.     The Debtor argues that mandatory abstention is not applicable because the State Court Action could not be timely adjudicated in State Court. As more fully set forth in the Motion, it is the Debtor's burden to demonstrate why the State Court Action cannot be timely adjudicated in State Court. The Debtor has not met this burden. First, as set forth above, the Debtor's commencement of this case impeded the timely adjudication of the dispute in State Court. Had the January 19, 2016 hearing gone forward as scheduled, the fate of the Property very likely would have already been determined by the State Court. Nothing in the Reply argues to the contrary. Having impeded that litigation, it cannot now claim that the timely adjudication element of mandatory abstention is missing.

14.     The Debtor attempts to meet its burden by pointing to a conversation that it purports to have had with the Trial Support Clerk in State Court. The Debtor admits, however, that the Trial Support Clerk gave it no information as to when a trial could be scheduled. The only quasi-specific timing information that the Debtor learned from the Trial Support Clerk was that a mediation conference would be scheduled in approximately 4 to 6 months. The Debtor does not say if it asked the Trial Support Clerk how soon the hearing to consider the OSC could be re-scheduled. That question would have been more appropriate, and the answer enlightening, as the hearing on the OSC would likely be dispositive.

15.     Based upon the Debtor's vague account of its conversation with the Trial Support Clerk, and the very limited information that was gleaned from that conversation, the Debtor simply has not met its burden and mandatory abstention is appropriate.

16. In light of the foregoing, and for all of the reasons discussed at length in the Motion, the Purchaser respectfully submits that dismissal of this chapter 11 case, or, in the alternative abstention and remand of the State Court Action is warranted.

Dated: New York, New York
April 19, 2016

        COZEN O'CONNOR

        By: */s/ Frederick E. Schmidt, Jr.*
           Frederick E. Schmidt, Jr.
        277 Park Avenue
        New York, New York 10172
        (212) 883-4900
        (646) 588-1552 (fax)
        eschmidt@cozen.com
        *Attorneys for 163 East 69 Realty, LLC*